UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ZUBAIR ASIF AHMED,

Plaintiff,

v.

UNITED STATES DEPARTMENT OF STATE, et al.,

Defendants.

No. 26 CV 2706

Judge Manish S. Shah

## MEMORANDUM OPINION AND ORDER

Zubair Asif Ahmed is seeking admission to the United States for his fiancée, Aminda El Ayadi. After U.S. Citizenship and Immigration Services approved Ahmed's visa petition and transmitted it to the State Department for processing, El Ayadi, a Moroccan national, traveled to Casablanca for her consular interview. After the interview, the consular officer retained El Ayadi's passport and verbally informed her that the visa application was approved. The visa application remained in administrative processing for eleven months, until Ahmed initiated this case in federal court seeking an order compelling adjudication, and filed an emergency motion for injunctive relief. A month later, the U.S. Consulate in Casablanca returned El Ayadi's passport without a visa. Ahmed then filed a First Amended Complaint, and defendants moved to dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. Because the visa application has been denied, and Ahmed has no legally cognizable interest in the process afforded to El Ayadi, the motion to dismiss is granted.

## I. Legal Standards

A motion under Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject-matter jurisdiction and comes in two forms—facial and factual. A facial challenge argues that the plaintiff has not sufficiently "*alleged* a basis of subject matter jurisdiction." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (emphasis in original) (cleaned up). I accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Id.* A factual challenge, by contrast, contends that "there is *in fact* no subject matter jurisdiction," even if the pleadings are formally sufficient. *Id.* (emphasis in original) (cleaned up). The requirement that jurisdiction be established as a threshold matter is "inflexible and without exception," so a challenge to subject-matter jurisdiction under Rule 12(b)(1) must be resolved before any arguments under Rule 12(b)(6) can be reached. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) (cleaned up); *see Yassan v. J.P. Morgan Chase & Co.*, 708 F.3d 963, 967 n.1 (7th Cir. 2013).

## II. Facts

In early 2023, Zubair Asif Ahmed and Amina El Ayadi got formally engaged in Casablanca, Morocco. [27] ¶ 21.[1] Later that year, Ahmed, a United States citizen, filed a Form I-129F Petition for Alien Fiancée with U.S. Citizenship and Immigration Services seeking a K-1 visa for El Ayadi, a Moroccan national and citizen. [27] ¶¶ 8 & 21. In April 2025, that petition was approved by U.S. Citizenship and Immigration Services and transferred to the U.S. Embassy in Casablanca. [27] ¶ 22.

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings.

El Ayadi then appeared for her consular interview, at which time the consular officer told her that her visa application was approved. [27] ¶ 23. He kept her passport. [27] ¶ 23. The application was then placed in "administrative processing" with no timeline provided or additional documentation requested. [27] ¶ 24. A couple of months later, the consulate verbally assured El Ayadi that her visa and passport would be delivered within two weeks via courier. [27] ¶ 25. After another month passed, the status of El Ayadi's application changed to "Refused – Administrative Processing." [27] ¶ 26. For the next eight months, Ahmed and El Ayadi sought clarification from the consulate, but none was received, the status was unchanged, and El Ayadi's passport was retained. [27] ¶¶ 26–28.

Ahmed, representing himself pro se, brought this suit in March 2026, naming the Department of State; Marco Rubio, in his official capacity as Secretary of State; the Department of Homeland Security; Markwayne Mullin, in his official capacity as Secretary of Homeland Security; U.S. Citizenship and Immigration Services; Joseph B. Edlow, in his official capacity as Director of USCIS; the U.S. Consulate in Casablanca; and Christopher Deutsch, in his official capacity as the U.S. Consul General in Casablanca.[2] *See* [1]. Through several claims, he sought relief compelling

---

[2] Ahmed names "U.S. Embassy Casablanca," but the U.S. Embassy in Morocco is in Rabat, so I infer he means the U.S. Consulate in Casablanca. He also names a "John Doe" as a placeholder for the Consul General in Casablanca, so I substitute the current office holder. *See* Fed. R. Civ. P. 25(d).

Ahmed's response to the motion to dismiss suggests that he intended to name the consular officer responsible for adjudicating the visa application, not the Consul General. *See* [34] at 6. Whether the Consul General or the consular officer is a named defendant, the analysis of Ahmed's standing to sue is the same.

the adjudication of El Ayadi's visa application, the return of her passport, or an explanation for the delay. [1] at 13.

The next month, the U.S. Consulate in Casablanca gave El Ayadi's passport to a courier service without notifying her. [27] ¶ 28. Two weeks passed before El Ayadi received notice from the courier directly, informing her that her passport had been sitting in its office and that she must retrieve it immediately. [27] ¶ 30. El Ayadi traveled to Casablanca by bus—over 300 miles round trip—and had to pay a fee to retrieve her passport. [27] ¶ 31. The passport did not contain a K-1 visa, and El Ayadi never received any communications from defendants about its return. [27] ¶¶ 32–33. After El Ayadi's passport was returned, Ahmed filed the now-operative First Amended Complaint, [27], adding factual allegations and an additional claim for violations of the Immigration and Nationality Act and the Administrative Procedure Act.

## III. Analysis

Article III limits the jurisdiction of federal courts to "Cases" and "Controversies," and standing is "an essential and unchanging part of the case-or-controversy requirement." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "To establish standing under Article III of the Constitution, a plaintiff must demonstrate (1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Thole v. U. S. Bank N.A*, 590 U.S. 538, 540 (2020).

"The second and third standing requirements—causation and redressability—are often 'flip sides of the same coin.' If a defendant's action causes an injury, enjoining the action or awarding damages for the action will typically redress that injury. So the two key questions in most standing disputes are injury in fact and causation." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 380–81 (2024) (quoting *Sprint Communications Co. v. APCC Services, Inc.*, 554 U.S. 269, 288, (2008)). Plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing each element. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

Ahmed's "interest in being united with his [fiancée] is sufficiently concrete and particularized to form the basis of an Article III injury in fact." *Trump v. Hawaii*, 585 U.S. 667, 698 (2018); *see also Pietersen v. United States Dep't of State*, 138 F.4th 552, 559 (D.C. Cir. 2025) (U.S. citizen pursuing K-1 visa for his fiancée had standing to challenge State Department guidance on visa decisions). But Ahmed must also establish that his injury "likely was caused or likely will be caused by the defendant's conduct." *All. for Hippocratic Med.*, 602 U.S. at 382.

In his response to the motion to dismiss, Ahmed abandons his request for an order directing defendants to issue a K-1 visa. *See* [34]. The arguments for standing focus on defendants' failure to issue a written refusal notice complying with the Immigration and Nationality Act, 8 U.S.C. § 1201(g). Ahmed contends that, because no written refusal has been issued, the visa application has not been refused at all, and this court therefore has jurisdiction to order defendants to issue a written refusal notice. Not so.

The First Amended Complaint does not support a reasonable inference that El Ayadi's visa application is still pending. Ahmed alleges that the application status changed in June 2025 to "Refused – Administrative Processing," and that the Embassy advised that the passport would be returned with a written explanation. [27] ¶ 26. Although there was considerable delay thereafter with no written explanation, the passport has since been returned to El Ayadi without a visa. [27] ¶ 27–33.

Returning an applicant's passport—as required for a consular officer to refuse a nonimmigrant visa under 22 C.F.R. § 41.121—indicates that the application has been refused. It also distinguishes this case from others where an application was still under review following a refusal for administrative processing. *Contra Ebrahimi v. Blinken*, 732 F.Supp.3d 894, 904 (N.D. Ill. 2024) (plaintiffs had standing to sue after State Department expressly informed them that they would receive another adjudication). The failure to include the promised written explanation does not change the decision to refuse the visa—El Ayadi's "visa was not issued, thus it was refused." *Nasir v. United States Dep't of State*, 749 F.Supp.3d 938, 942 (N.D. Ill. 2024) (consular officers are limited to the binary choice to either issue or refuse the visa). Since the visa has been refused, there is no further review for me to order defendants to conduct.

Absent the prospect of further review, the First Amended Complaint does not allege any conduct by the defendants that caused Ahmed's legally cognizable injury—alienation from his fiancée. Whether defendants issue a written refusal notice to El

Ayadi in compliance with the Immigration and Nationality Act is too attenuated from the possibility of the couple being reunited to support standing for Ahmed. Similarly, any procedural deficiencies in the return of El Ayadi's passport also have no bearing on Ahmed's interest in being united with his fiancée. Ahmed does allege that El Ayadi was forced to take formal employment leave and incur personal expenses to retrieve her passport, but those are El Ayadi's injuries, not Ahmed's.

In the alternative, Ahmed asks for leave to file a second amended complaint. [34] at 11. While leave to amend should be freely given when justice so requires, "[g]ranting leave to amend is pointless when the plaintiff fails to 'suggest to the court the ways in which he might cure the defects.'" *Fosnight v. Jones*, 41 F.4th 916, 924–25 (7th Cir. 2022) (quoting *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 335 (7th Cir. 2018)) (cleaned up). The passing request at the end of Ahmed's response to the motion to dismiss does not explain how the jurisdictional defects in the First Amended Complaint could be cured, so I decline to grant Ahmed leave to amend. *Fosnight*, 41 F.4th at 925 (plaintiff's "request for leave to amend consisted of two conclusory sentences at the end of his response to the motion to dismiss" and was inadequate).

## IV. Conclusion

Defendants' motion to dismiss, [28], is granted. Ahmed's emergency motion for injunctive relief, [11], is denied, because Ahmed has no likelihood of success without standing. The case is dismissed without prejudice for lack of subject-matter jurisdiction. Enter judgment and terminate civil case.

ENTER:

Manish S. Shah
United States District Judge

Date: August 21, 2026